1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 RYAN JOEL HOPSON, | Case No.  1:24-cv-00474-BAM (PC) |
| 12          Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO |
| 13    v. | ACTION |
| 14 CHAVEZ, *et al.*, | FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR |
| 15         Defendants. | FAILURE TO STATE A CLAIM, FAILURE TO OBEY A COURT ORDER, AND |
| 16 | FAILURE TO PROSECUTE |
| 17 | (ECF No. 10) |
| 18 | **FOURTEEN (14) DAY DEADLINE** |

19

20 **I.**     **Background**

21       Plaintiff Ryan Joel Hopson ("Plaintiff") is a state prisoner and former county jail inmate

22 proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

23       On November 18, 2025, the Court screened the complaint and found that it failed to

24 comply with Federal Rules of Civil Procedure 8, 18, and 20 and failed to state a cognizable claim

25 for relief.  (ECF No. 10.)  The Court issued an order granting Plaintiff leave to file a first

26 amended complaint or a notice of voluntary dismissal within thirty (30) days.  (*Id.*)  The Court

27 expressly warned Plaintiff that the failure to comply with the Court's order would result in a

28 recommendation for dismissal of this action, with prejudice, for failure to obey a court order and

1

1  for failure to state a claim.  (*Id.*)  Plaintiff failed to file an amended complaint or otherwise

2  communicate with the Court, and the deadline to do so has expired.

3  **II.     Failure to State a Claim**

4       **A. Screening Requirement and Standard**

5       The Court is required to screen complaints brought by prisoners seeking relief against a

6  governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

7  § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

8  or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

9  relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

10       A complaint must contain "a short and plain statement of the claim showing that the

11  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

12  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

13  conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

14  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

15  true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,

16  572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

17       To survive screening, Plaintiff's claims must be facially plausible, which requires

18  sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

19  for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

20  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully

21  is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

22  standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

23       **B. Plaintiff's Allegations**

24       Plaintiff is currently housed at the California Correctional Institution in Tehachapi,

25  California.  Plaintiff alleges the events in the complaint occurred while he was a county jail

26  inmate[1] housed at the Kings County Jail in Hanford, California.  Plaintiff names as defendants:

27  ─────────────
[1] Plaintiff has not stated whether he was a pretrial detainee or a convicted prisoner at the time of the events in the
complaint.  In an abundance of caution, the Court has provided the legal standards applicable to pretrial detainees,
28  where applicable.  In any amended complaint, Plaintiff should clearly state whether he was a pretrial detainee or a

1    (1) Sergeant G. Chavez; (2) Commander Thomas; (3) Corporal Calderon; (4) Kings County Jail;

2    (5) Kings County Sheriff Department; and (6) Miss Cling DT96.

3        In the complaint, which is twenty-nine pages in length, Plaintiff alleges a laundry list of

4    violations of his constitutional rights, including delays in receiving mail, improper processing of

5    legal mail, unsanitary conditions of confinement, delays in returning laundry, malfunctioning

6    phones and visitor monitors, delays and financial barriers to accessing tablets, lack of consistent

7    religious services, missing and inadequate food, disciplinary actions related to dimming cell lights

8    that cause Plaintiff to experience migraines, and discrimination on the basis of race.

9        Plaintiff requests injunctive relief and money damages.

10   **C.  Discussion**

11   **Federal Rule of Civil Procedure 8**

12       Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim

13   showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Detailed factual allegations

14   are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

15   conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must

16   set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

17   its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations

18   are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*,

19   572 F.3d at 969.

20       Plaintiff's complaint is not short, and while it identifies the specific claims, the allegations

21   are conclusory as to who was involved.

22   **Linkage Requirement**

23   The Civil Rights Act under which this action was filed provides:

24   Every person who, under color of [state law] . . . subjects, or causes to be
     subjected, any citizen of the United States . . . to the deprivation of any rights,
25   privileges, or immunities secured by the Constitution . . . shall be liable to the
     party injured in an action at law, suit in equity, or other proper proceeding for
26   redress.

27   42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between

28   convicted prisoner during the events in the complaint.

3

1   the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See*

2   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The

3   Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional

4   right, within the meaning of section 1983, if he does an affirmative act, participates in another's

5   affirmative acts or omits to perform an act which he is legally required to do that causes the

6   deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

7       Here, Plaintiff's complaint fails to link much of the alleged wrongful conduct to any

8   defendant.

9       **Local Law Enforcement Defendant**

10      Plaintiff names the Kings County Jail as a defendant.

11      "To state a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: (1) that a

12  right secured by the Constitution or laws of the United States was violated; and (2) that the

13  alleged violation was committed by a person acting under color of state law." *Campbell v.*

14  *Washington Dep't of Soc. Servs.*, 671 F.3d 837, 842 n.5 (9th Cir. 2011) (citing *Ketchum v.*

15  *Alameda Cty.*, 811 F.2d 1243, 1245 (9th Cir. 1987)).

16      The Kings County Jail is not a proper defendant. *See Powell v. Cook Cty. Jail*, 814 F.

17  Supp. 757, 758 (N.D. Ill. 1993) ("Section 1983 imposes liability on any 'person' who violates

18  someone's constitutional rights 'under color of law.' Cook County Jail is not a 'person.'"); *Shaw*

19  *v. Fresno Cnty. Jail*, No. 1:18-cv001376-LJO-BAM, 2019 WL 248878, at *3 (E.D. Cal. Jan. 17,

20  2019).

21      **Federal Rules of Civil Procedure 18 and 20**

22      Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed.

23  R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Mackey v. Price*,

24  2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021

25  WL 843462 (E.D. Cal. Mar. 5, 2021). Plaintiff may bring a claim against multiple defendants so

26  long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and

27  occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2);

28  *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement

1   refers to similarity in the factual background of a claim. Id. at 1349. Only if the defendants are

2   properly joined under Rule 20(a) will the Court review the other claims to determine if they may

3   be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

4       Plaintiff may not raise different claims against different defendants in a single action.  For

5   instance, Plaintiff may not state unrelated claims, arising on different dates, regarding delays in

6   receiving mail, inadequate food, racial discrimination, or unsanitary conditions of confinement in

7   the same action.  Merely because Plaintiff was housed at Kings County Jail when the incidents

8   occurred does not make every injury or incident related.  Separate unrelated claims must be filed

9   in separate lawsuits.

10      **Supervisory Liability**

11      Insofar as Plaintiff is attempting to sue any defendant based solely on their supervisory

12   role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or

13   omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–

14   77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of*

15   *Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.

16   2002).

17      Supervisors may be held liable only if they "participated in or directed the violations, or

18   knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th

19   Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*,

20   567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal

21   participation if the official implemented "a policy so deficient that the policy itself is a

22   repudiation of the constitutional rights and is the moving force of the constitutional violation."

23   *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations

24   marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970,

25   128 L.Ed.2d 811 (1970).

26      Here, Plaintiff has failed to establish that any supervisory defendant participated in or

27   directed any constitutional violation or that they implemented a policy so deficient that it was the

28   moving force of any constitutional violation.

1    **First Amendment**[2]

2            1.      Outgoing Mail

3         Generally, prisoners have "a First Amendment right to send and receive mail." *Witherow*

4    *v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995).  However, there must be a "delicate balance" between

5    prisoners' First Amendment rights and the discretion given to prison administrators to govern the

6    order and security of the prison.  *Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989).  A prison

7    may adopt regulations or practices for incoming mail which impinge on prisoners' First

8    Amendment rights as long as the regulations are "reasonably related to legitimate penological

9    interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Nonetheless, isolated incidents of mail

10   interference or tampering will not support a claim under section 1983 for violation of plaintiff's

11   constitutional rights.  *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (temporary delay or

12   isolated incident of delay of mail does not violate a prisoner's First Amendment rights); *see also*

13   *Davis v. Goord*, 320 F.3d 346, 351 (2d. Cir. 2003) (isolated incident of mail tampering usually

14   insufficient to state claim).

15           2.      Legal Mail

16        "[P]risoners have a protected First Amendment interest in having properly marked legal

17   mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir.

18   2017) (concluding the protected First Amendment interest extends to civil legal mail).  Consistent

19   with the First Amendment, prison officials may (1) require that mail from attorneys be identified

20   as such and (2) open such correspondence in the presence of the prisoner for visual inspection.

21   *See Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974).

22           3.      Religion

23        Incarcerated persons do not forfeit the right to the free exercise of religion, which is

24   guaranteed by the First Amendment.  *See McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987);

25   *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122-23 (9th Cir. 2013).

26
27   [2] The legal standards applicable to First Amendment claims are the same for prisoners and pretrial detainees, so long as the conditions applied to detainees do not amount to punishment. *See, e.g.*, *Mangiaracina v. Penzone*, 849 F.3d 1191, 1197 (9th Cir. 2017) (applying *Turner* to First Amendment challenge of mail policy brought by pretrial detainees); *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1209-13 (9th Cir. 2008) (applying *Turner* to First Amendment challenge brought by pretrial detainees).

28

1    To state a claim under the Free Exercise Clause, an inmate must plausibly allege that a

2    prison official's actions (a) "substantially burden[ed]" the inmate's exercise of a sincerely-held

3    religious belief; and (b) did so in an unreasonable manner—i.e., the official's actions were not

4    "rationally related to legitimate penological interests." *See O'Lone v. Estate of Shabazz*, 482 U.S.

5    342, 348-50 (1987); *Jones v. Williams*, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015); *Shakur v.*

6    *Schriro,* 514 F.3d 878, 884–85 (9th Cir. 2008). A substantial burden places more than an

7    inconvenience on religious exercise; it must have a tendency to coerce individuals into acting

8    contrary to their religious beliefs or exert substantial pressure on an adherent to modify his

9    behavior and to violate his beliefs. *Jones*, 791 F.3d at 1031–32. Plaintiff must demonstrate that

10   prison officials prevented him from engaging in conduct which he sincerely believes is required

11   by his faith. *Shakur*, 514 F.3d at 884–85. The underlying religious belief must be "sincerely

12   held." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see also Shakur*, 514 F.3d at 884–85

13   (noting that the "sincerity test," not the "centrality test," applies to a free exercise analysis).

14                    4.      Phone Calls

15       "Prisoners have a First Amendment right to telephone access, subject to reasonable

16   security limitations." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (citing *Strandberg v.*

17   *City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)), *amended by* 135 F.3d 1318 (9th Cir.

18   1998); *see also Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) (per curiam) (concluding

19   no right to a specific phone rate). If the limitations on access are reasonable, there is no First

20   Amendment violation. *Johnson v. Galli*, 596 F. Supp. 135, 138 (D. Nev. 1984).

21       **Fourteenth Amendment**

22                    1.      Conditions of Confinement

23       "[P]re-adjudication detainees retain greater liberty protections than convicted ones."

24   *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted). As a pretrial detainee,

25   Plaintiff is protected from conditions of confinement which amount to punishment. *Bell v.*

26   *Wolfish*, 441 U.S. 520, 535–36 (1979); *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017–18

27   (9th Cir. 2010).

28       It is the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment,

1  which governs pretrial detainees. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th

2  Cir. 2016).  In order to state a cognizable claim for unconstitutional conditions of confinement

3  related to a risk to safety or health, a plaintiff must specifically plead as follows: (1) the defendant

4  made an intentional decision with respect to the conditions under which the plaintiff was

5  confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the

6  defendant did not take reasonable measures to abate that risk, even though a reasonable officer in

7  the circumstances would have appreciated the high degree of risk involved—making the

8  consequences of the defendant's conduct obvious; and (4) by not taking such measures, the

9  defendant caused the plaintiff's injuries. *Castro*, 833 F.3d at 1071.  With respect to the third

10  element, the defendant's conduct must be "objectively unreasonable." *Id.* (citing *Kingsley v.*

11  *Hendrickson*, 576 U.S. 389 (2015)).

12                     2.       Equal Protection

13        The Equal Protection Clause requires that persons who are similarly situated be treated

14  alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, (1985); *Shakur v.*

15  *Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be established by

16  showing that defendants intentionally discriminated against a plaintiff based on his membership

17  in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690,

18  702– 03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), or that

19  similarly situated individuals were intentionally treated differently without a rational relationship

20  to a legitimate state purpose, *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601–02 (2008);

21  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546

22  F.3d 580, 592 (9th Cir. 2008).

23        **Prison Regulations and Policies**

24        To the extent that any Defendant has not complied with applicable state statutes or prison

25  regulations, these deprivations do not support a claim under § 1983.  Section 1983 only provides

26  a cause of action for the deprivation of federally protected rights. *See, e.g.*, *Nible v. Fink*, 828

27  Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do

28  not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009)

1    (section 1983 claims must be premised on violation of federal constitutional right); *Prock v.*

2    *Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at \*11–12 (E.D. Cal. Oct. 8, 2013)

3    (noting that several district courts have found no implied private right of action under title 15 and

4    stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v.*

5    *Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at \*3 (S.D. Cal. Nov. 13, 2009)

6    (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code

7    of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL

8    1211372, at \*9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under

9    Title 15 of the California Code of Regulations) ; *Tirado v. Santiago*, No. 1:22-CV-00724 BAM

10   PC, 2022 WL 4586294, at \*5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted,

11   No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (same).

12          **Injunctive Relief**

13          Insofar as Plaintiff seeks injunctive relief, any such request is now moot.  Plaintiff is no

14   longer housed at the Kings County Jail, where he alleges the incidents at issue occurred.

15   Therefore, any injunctive relief he seeks against the officials at the Kings County Jail is moot.

16   *See Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for

17   injunctive relief generally become moot upon transfer) (citing *Johnson v. Moore*, 948 F.2d 517,

18   519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's]

19   policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable

20   expectation of returning to [the prison]")).

21          Furthermore, any award of equitable relief is governed by the Prison Litigation Reform

22   Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison

23   conditions shall extend no further than necessary to correct the violation of the Federal right of a

24   particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless

25   the court finds that such relief is narrowly drawn, extends no further than necessary to correct the

26   violation of the Federal right, and is the least intrusive means necessary to correct the violation of

27   the Federal right."  18 U.S.C. § 3626(a)(1)(A).

28   ///

1        **III.      Failure to Prosecute and Failure to Obey a Court Order**

2            **A.      Legal Standard**

3        Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with

4   any order of the Court may be grounds for imposition by the Court of any and all sanctions . . .

5   within the inherent power of the Court."  District courts have the inherent power to control their

6   dockets and "[i]n the exercise of that power they may impose sanctions including, where

7   appropriate, . . . dismissal." *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986).  A

8   court may dismiss an action, with prejudice, based on a party's failure to prosecute an action,

9   failure to obey a court order, or failure to comply with local rules.  *See, e.g.*, *Ghazali v. Moran*, 46

10  F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*,

11  963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring

12  amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987)

13  (dismissal for failure to comply with court order).

14       In determining whether to dismiss an action, the Court must consider several factors:

15  (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its

16  docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of

17  cases on their merits; and (5) the availability of less drastic sanctions.  *Henderson v. Duncan*, 779

18  F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

19       **B.      Discussion**

20       Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the

21  Court's order.  The Court cannot effectively manage its docket if Plaintiff ceases litigating his

22  case.  Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

23       The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a

24  presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action.

25  *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976).  The fourth factor usually weighs against

26  dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d

27  639, 643 (9th Cir. 2002).  However, "this factor lends little support to a party whose

28  responsibility it is to move a case toward disposition on the merits but whose conduct impedes

10

1    progress in that direction," which is the case here. *In re Phenylpropanolamine (PPA) Products*

2    *Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

3         Finally, the Court's warning to a party that failure to obey the court's order will result in

4    dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262;

5    *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424.  The Court's November 18, 2025

6    screening order expressly warned Plaintiff that his failure to file an amended complaint would

7    result in a recommendation of dismissal of this action, with prejudice, for failure to obey a court

8    order and for failure to state a claim.  (ECF No. 10.)  Thus, Plaintiff had adequate warning that

9    dismissal could result from his noncompliance.

10        Additionally, at this stage in the proceedings there is little available to the Court that

11   would constitute a satisfactory lesser sanction while protecting the Court from further

12   unnecessary expenditure of its scarce resources.  As Plaintiff is proceeding *in forma pauperis* in

13   this action, it appears that monetary sanctions will be of little use and the preclusion of evidence

14   or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

15   **IV.    Conclusion and Recommendation**

16        Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a

17   District Judge to this action.

18        Furthermore, the Court finds that dismissal is the appropriate sanction and HEREBY

19   RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim

20   pursuant to 28 U.S.C. § 1915A, for failure to obey a court order, and for Plaintiff's failure to

21   prosecute this action.

22        These Findings and Recommendation will be submitted to the United States District Judge

23   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen**

24   **(14) days** after being served with these Findings and Recommendation, the parties may file

25   written objections with the Court.  The document should be captioned "Objections to Magistrate

26   Judge's Findings and Recommendation."  **Objections, if any, shall not exceed fifteen (15) pages**

27   **or include exhibits.  Exhibits may be referenced by document and page number if already in**

28   **the record before the Court.  Any pages filed in excess of the 15-page limit may not be**

1    **considered.**  The parties are advised that failure to file objections within the specified time may

2    result in the waiver of the "right to challenge the magistrate's factual findings" on

3    appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*,

4    923 F.2d 1391, 1394 (9th Cir. 1991)).

5

6    IT IS SO ORDERED.

7       Dated:    **January 5, 2026**            /s/ *Barbara A. McAuliffe*    _

8                                        UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28